**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL S. LIBOCK, *individually and on behalf of* MICHAEL O. LIBOCK<br><br>Plaintiff,<br><br>v.<br><br>HORIZON HEALTHCARE SERVICES, INC. d/b/a HORIZON BLUE CROSS BLUE SHILED OF NEW JERSEY, MAGELLAN HEALTH SERVICES, INC., and MAGELLAN BEHAVIORAL HEALTH OF NEW JERSEY, LLC,<br><br>Defendants. | Civil Action No. 16-2812 (JLL) (JAD)<br><br>OPINION |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court upon Plaintiff's motion to compel certain discovery. (ECF No. 21). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court did not hear oral argument on Plaintiff's application. Upon careful consideration of the parties' submissions, and for the reasons stated below, Plaintiff's motion to compel is **GRANTED**.

**I.  BACKGROUND**

In this ERISA action, Plaintiff Michael S. Libock ("MSL") challenges Defendants' denial of claims for reimbursement submitted on behalf of his son Michael O. Libock ("MOL") relating to MOL's treatment for certain mental and substance abuse disorders. (*See* D.E. No. 1, Complaint ("Compl." ¶¶ 11-16, 28).

1

### a. Medical Treatment and Claims for Reimbursement

According to the Complaint, on October 10, 2013, MOL was admitted for inpatient treatment at Westbridge, a non-profit treatment center for individuals experiencing co-existing mental and substance abuse disorders. (*Id.* ¶ 11). MOL remained at Westbridge until April 4, 2014. (*Id.* ¶ 12). At the conclusion of MOL's inpatient stay, he continued treatment on an outpatient basis. (*Id.* ¶ 24). MSL, as the personal representative of MOL, (*Id.* ¶ 1), filed claims for reimbursement from Defendant insurer Horizon Blue Cross Blue Shield of New Jersey ("Horizon") with respect to MOL's treatment. Specifically, MSL filed claims for reimbursement for MOL's inpatient care totaling $161,268, and claims for reimbursement for MOL's outpatient care totaling $123,556. (*Id.* ¶¶ 22, 25). Defendant Horizon denied all of MSL's claims for reimbursement with respect MOL's inpatient care, and reimbursed MSL for only $7,477 with respect to MOL's outpatient care. (*Id.* ¶¶ 23, 25).

### b. Administrative Appeal of Claim Denials

MSL appealed directly to Defendant Horizon with respect to certain claim denials. (*Id.* ¶ 29). While the Complaint is silent as the extent of MSL's direct appeals, Defendants submit a letter sent by MSL to Horizon indicating that MSL sought to appeal Horizon's denial of claims relating to payments made by MSL between October 10, 2013 and January 2, 2014—a period during which MOL received inpatient treatment at Westbridge. (*See* D.E. No. 22-6, Bunn Declaration Exhibit B). These claims totaled $69,360.30. (*Id.*). Defendants similarly submit a second letter indicating that MSL sought a second-level appeal of the same claims, totaling $69,360.30 (*See* D.E. No. 22-7, Bunn Declaration Exhibit C). Defendants rejected MSL's appeals and upheld the initial

determination to deny the $69,360.30 in claims. (Compl. ¶ 30; *see also* D.E. No. 22-8, Bunn Declaration Exhibit D (Letter from Horizon to MSL upholding Horizon's initial claim denial)).

MSL then filed the instant Complaint invoking his rights under 29 U.S.C. § 1132(a)(1)(B), alleging that Horizon, in conjunction with the other Defendants, improperly denied his claims for reimbursement.

### c. The Instant Discovery Dispute

In November 2016, Defendants provided documents to Plaintiff from the administrative record in this case relating to MOL's inpatient treatment at Westbridge from October 2013 to January 2, 2014. (*See* D.E. No. 21-2, Leardi Declaration at Exhibit E). Defendants subsequently provided additional documentation demonstrating that other claims were, in fact, submitted to Defendants for reimbursement. (*See* D.E. No. 21-2, Leardi Declaration at Exhibit F). In letter correspondence between the parties, Plaintiff sought further records relating to claims for reimbursement other than those submitted between October 10, 2013 and January 2, 2014. However, Defendants declined to produce such documents, arguing that they were irrelevant to the substantive allegations of the Complaint and thus outside the scope of discovery. (*See* D.E. No. 21-2, Leardi Declaration at Exhibits G, H).

On June 29, 2017, Plaintiff filed the instant motion to compel Defendants to produce the "full administrative record" relating to each of MSL's claims for reimbursement of payments for MOL's treatment from October 2013 through 2016. (*See* D.E. No. 21-1, Memorandum of Law in Support of Plaintiff's Motion to Compel ("Pl. Mov. Br.")).

## II. STANDARDS OF REVIEW

### a. 29 U.S.C. § 1132(a)(1)(B)

A denial of ERISA benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the administrator has such discretionary authority, the administrator's use of that discretion in making claims decisions must be reviewed under an "arbitrary and capricious" standard. *Doroshow v. Hartford Life & Acc. Ins. Co.*, 574 F.3d 230, 233 (3d Cir. 2009).

In reviewing an administrator's exercise of discretionary authority, courts "courts generally must base their review . . . on the materials that were before the administrator when it made the challenged decision." *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 (3d Cir. 2010). Thus, in most circumstances, "the record for arbitrary-and-capricious review of ERISA benefits denial is the record made before the plan administrator, and cannot be supplemented during litigation." *Id.* (internal quotations omitted).

### b. Rule 26

Federal Rule of Civil Procedure 26(b)(1) defines the scope of permissible discovery in a civil action more generally. Rule 26(b)(1) states the following:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Trial courts have broad discretion to determine the proper scope of discovery under Rule 26, and such determinations will be disturbed only upon a showing of abuse of this discretion. *See Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987).

**III.   DISCUSSION**

Plaintiff moves the Court for an order compelling Defendants to produce the administrative record pertaining to each claim denial challenged in the Complaint.

Specifically, Plaintiff argues that Defendants' two productions—first, of documents relating to claims from October 2013 to January 2014; and second, of the additional document showing that MSL made subsequent claims—fail to meet Defendants' burden of producing the "entire administrative record" of the claim denials addressed in the Complaint. This is because, according to Plaintiff, the allegations of the Complaint are not limited to the specific claims which were directly appealed to Defendants through the administrative remedies process. Rather, argues Plaintiff, the Complaint seeks redress for Defendants' allegedly wrongful denials from October 2013 through October 2016—including claims for both inpatient and outpatient treatment of MOL. Plaintiff contends that discovery regarding these claims are relevant to the Complaint, and thus mandated under ERISA.

Defendants raise three arguments in opposition. First, Defendants argue that "Plaintiffs' failure to appeal from the denial of other benefits rendered after 2013 means that the only claim properly before this Court is Plaintiffs' claim for inpatient benefits rendered at Westbridge in 2013." (D.E. No. 22, Defendant's Brief in Opposition "Def. Opp. Br." At 6). This is because, according to Defendants, Plaintiff's failure to exhaust their administrative remedies with respect

to subsequent claim denials bars Plaintiff as a matter of law from addressing those claim denials in federal court.

Second, Defendants construe the Complaint more narrowly than Plaintiff, arguing that the Complaint explicitly seeks reimbursement for inpatient benefits only, and thus only limited discovery as to those specific benefit denials is relevant. (*Id.*). The Court construes this as a relevance argument under Federal Rule of Civil Procedure 26(b).

And third, Defendants argue that they need not produce the entire range of discovery requested by Plaintiff because an unspecified number of the claims submitted by Plaintiff constitute claims for reimbursement of "custodial care," which would not be covered by the operative insurance agreement. (*Id.* at 7-8).

The Court will address each argument in turn below. Because Plaintiff's moving brief responds to arguments raised previously by Defendants (as well as in their opposition brief), the Court will begin each section with Defendants' arguments in the interest of clarity.

### a. Whether Plaintiff's Alleged Failure to Exhaust Administrative Remedies Regarding Certain Claim Denials Bars Discovery into those Claim Denials

Defendants first argue that discovery should be limited to documents relating to claim denials administratively appealed by Plaintiff prior to bringing the instant federal action. In other words, Defendants contend that Plaintiff's failure to exhaust his administrative remedies with respect to the post-January 2, 2014 claim denials warrants the dismissal of the allegations related to those denials and obviates the need for discovery on those claim denials. (*See* Def. Opp. Br. At 5-6).

This Third Circuit has long held that a party bringing an ERISA action under section 1132(a)(1)(B) to enforce or clarify the terms of a benefit plan must exhaust administrative remedies. *See Zipf v. Am. Tel. & Tel. Co.*, 799 F.2d 889, 891 (3d Cir. 1986). However, "the failure

6

to exhaust will be excused in cases where a fact-sensitive balancing of factors reveals that exhaustion would be futile." *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir. 2007).

Significantly, the Third Circuit has held that exhaustion in the ERISA context is a "judge-made concept," and is thus non-jurisdictional in nature. *Id.* Because of this, a plaintiff is not required to plead facts in support of exhaustion. *Prof'l Orthopedic Assocs., PA v. CareFirst BlueCross BlueShield*, 2016 WL 1338597, at *4 (D.N.J. Apr. 5, 2016) (citing *Metro. Life Ins. Co.* 501 F.3d at 280. That being said, district courts following *Metropolitan Life Insurance* have continued to consider the "failure to exhaust defense" at the motion to dismiss stage, on the grounds that "the facts that *are* pled may . . . definitively establish that remedies were not exhausted." *Lewis-Burroughs v. Prudential Ins. Co. of Am.*, No. 14-1632, 2015 WL 1969299, at *4 (D.N.J. Apr. 30, 2015); *see also Prof'l Orthopedic Assocs., PA*, 2016 WL 1338597, at *4. In considering this exhaustion defense at the motion to dismiss stage, courts will consider the allegations of the complaint, as well as "documents integral to or explicitly relied upon in the complaint, even if they are not literally attached." *Prof'l Orthopedic Assocs., PA*, 2016 WL 1338597, at *1 (citing *See In re Burlington Coat Factory See. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

As the foregoing analysis shows, even at the motion to dismiss stage, exhaustion and futility analysis requires a "fact sensitive balancing of factors," *Metro. Life Ins. Co.* 501 F.3d at 279, and may involve review of documents contained the administrative record itself, *Prof'l Orthopedic Assocs., PA*, 2016 WL 1338597, at *1. As such, at this early stage in the litigation, the Court is hesitant to foreclose Plaintiff from obtaining documents from the administrative record relevant to *all* claim denials addressed in the complaint—whether administratively appealed or not. Indeed, such limitation would improperly restrict Plaintiff's ability to prepare for the fact-sensitive "exhaustion" and "futility" analysis which may take place in a future dispositive motion.

Accordingly, the Court concludes that Plaintiff's alleged failure to exhaust administrative remedies with respect to certain claim denials does not foreclose Plaintiff's right to obtain documents relevant to those claim denials at this early stage of the case.[1]

### b. Whether the Documents Sought by Plaintiff are Relevant to the Complaint

Next, Defendants argue that the documents sought by Plaintiff are not relevant to the allegations of the Complaint as currently plead. Specifically, Defendants argue that that the allegations of the Complaint "exclude[] any claim for benefits related to outpatient or other treatment." (Def. Opp. Br. At 6). Defendants point to the first (and only) substantive count of the Complaint, noting that it makes explicit reference to "inpatient" and "residential" services, but does not reference the outpatient services rendered to MOL after January 2, 2014. (*Id.* at 3).

However, as Plaintiff properly notes, MOL's outpatient treatment and Defendants' alleged responsibility to reimburse Plaintiff for such treatment are explicitly addressed in the prior section of the Complaint, labelled "Factual Allegations." For example, the Complaint alleges that "to date, out of the $123,556.00 submitted for payment relative to M.O.L.'s outpatient treatment, only $7,477.00 has been paid by [Defendant] Horizon." (Compl. ¶ 25). The Complaint further alleges that "Defendants were responsible under the Plan to pay benefits relating to the residential treatment services provided by Westbridge to M.O.L. and for the outpatient services provided to M.O.L., and the denial of these benefits was arbitrary, capricious, and manifestly mistaken." (*Id.* ¶ 28).

---

[1] In so ruling, the Court does not pass judgment on the merits of Defendants' "exhaustion" affirmative defense, or on any counter-arguments thereto.

Upon review, the Court concludes that documentation relating to claims for reimbursement for MOL's outpatient care from January 2, 2014 and onward (including claims for both inpatient and outpatient care) are well within the ambit of the Complaint, and thus discoverable under Federal Rule of Civil Procedure 26.

### c. Whether Documents Related to Claims for "Custodial Care" are Beyond the Scope of Discovery

Finally, Defendants argue that discovery regarding certain claims for reimbursement of MOL's "custodial care" should be precluded, because such claims were explicitly excluded by the terms of the operative insurance agreement. (Def. Opp. Br. At 7-8). However, as Plaintiff properly notes, a determination of whether a particular claim falls within the ambit of an insurance plan constitutes a determination on the ultimate merits of an ERISA action brought under section 1132(a)(1)(B). *See* 29 U.S.C.A. § 1132(a)(1)(B) (establishing a cause of action for insurance claimants "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan").

As such, this argument does not foreclose Plaintiff's right to obtain documents related to "custodial care" claims at this early stage of the litigation.[2]

---

[2] Should it later be determined that specific claims for "custodial care" are not properly a part of this case, Defendants are free to raise this argument again at that time.

9

## IV. CONCLUSION

The Court, therefore, having considered the parties' submissions, finds that Plaintiff's motion to compel, (ECF No. 21), is **GRANTED**. An appropriate form of Order accompanies this Opinion.

_____  1/12/18
JOSEPH A. DICKSON, U.S.M.J.

cc: Hon. Jose L. Linares, U.S.D.J.